In re WASHINGTON MANUFACTURING COMPANY; Washington Industries, Inc. and KSA, Inc.

CITICORP NORTH AMERICA, INC.

v.

Timothy F. FINLEY, Trustee.

Timothy F. FINLEY, Trustee,

v.

Van E. HILL, et al.

Timothy F. FINLEY, Trustee,

v.

CITICORP NORTH AMERICA, INC.

No. 3:91–0088.

United States District Court,
M.D. Tennessee,
Nashville Division.

Oct. 4, 1991.

James A. Cherney, Richard A. Levy and Douglas A. Freeman of Latham & Watkins, Chicago, Ill., and Bradley A. MacLean of Farris, Warfield & Kanaday, Nashville, Tenn., for Citicorp North America, Inc.

Craig V. Gabbert, Jr., Glenn B. Rose, John F. Blackwood, and D. Alexander Fardon of Harwell, Martin & Stegall, Nashville, Tenn., for trustee.

## MEMORANDUM

JOHN T. NIXON, Chief Judge.

Pending before the Court in the above styled action is Timothy F. Finley's motion to withdraw the reference to bankruptcy court pursuant to 28 U.S.C. § 157(d). Finley is the court-appointed trustee in the above named jointly administered bankruptcy cases. For the reasons stated below, the Court denies Finley's motion to withdraw the reference to bankruptcy.

## I. BACKGROUND

Before filing for bankruptcy, Washington Manufacturing Company, Washington Industries, Inc., and KSA, Inc. (the Washington companies) were affiliated companies in the business of manufacturing and selling apparel. During the Washington

companies' economic downward spiral, the Washington companies' former owners sold Washington in an acquisition which involved the refinancing of existing debt by Citicorp North America, Inc. (Citicorp). On March 1, 1988, the Washington companies filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Shortly thereafter, Citicorp filed claims against the bankruptcy estate which stemmed from its refinancing of the Washington companies debt.

During the course of the pre-plan procedures, several adversary proceedings were filed. First, Citicorp, at the bankruptcy court's invitation, filed an adversary proceeding seeking a declaratory judgment that its secured claims be allowed in full and receive first priority. Then, the trustee responded with a fraudulent conveyance counterclaim against Citicorp which was included in a defendant complaint that also sought relief from ninety five other parties. Soon after, the trustee filed a second adversary proceeding, this one solely against Citicorp, which sought to set aside certain Citicorp liens as preferential transfers.

In an opinion dated September 5, 1990, the bankruptcy court requested that the parties file motions and memoranda on, inter alia, the propriety of (1) the trustee's demand for a jury trial on a fraudulent conveyance claim, and (2) the possible severance of issues concerning the allowability of Citicorp's secured claims from issues raised in the trustee's extensive third party actions. In response to the request, Citicorp filed motions and memoranda to strike the trustee's jury demand and for a separate trial of all adversary proceedings against it. The trustee responded with memoranda in opposition.

Before oral argument in bankruptcy court on Citicorp's motions, the trustee filed the motion to withdraw reference to bankruptcy that is now pending before the Court based on his demand for a jury trial in the fraudulent conveyance action. The trustee's motion to withdraw reference to bankruptcy encompasses all three adversary proceedings mentioned above because the bankruptcy court previously consolidated the fraudulent conveyance action with the other two.

## II. ANALYSIS

### A. Section 157(d)

The trustee's motion requires the Court to examine Congress' peculiar procedural contrivance of 28 U.S.C. § 157(d). To understand section 157(d), one must first regard section 157(a), which is the statutory provision that allows district courts to reference bankruptcy cases to bankruptcy judges. 28 U.S.C. § 157(a). Congress provided mandatory and non-mandatory withdrawal for such reference in section 157(d). The mandatory provision dictates that the district court must withdraw the reference on timely motion of a party if the resolution of the proceeding requires consideration of both title 11 and other federal laws that regulate organizations or activities affecting interstate commerce. 28 U.S.C. § 157(d). Finley does not base in any way his motion to withdraw on the mandatory withdrawal provision. It is notable for purposes of statutory construction, however, that the legislative history behind the mandatory withdrawal provision suggests that it should be read narrowly and that the district court should refuse withdrawal if withdrawal would unduly delay administration of the case. 130 Cong.Rec. S17,156 (daily ed. June 19, 1984) (statement of Sen. DeConcini); 130 Cong.Rec. H6244 (daily ed. March 21, 1984) (statement of Rep. Kastenmeier).

The non-mandatory withdrawal provision of the statute, on which Finley does base his motion, states in pertinent part: "The district court may withdraw, in whole or in part, any case or proceeding referred [to a bankruptcy judge] under this section, ... on timely motion of any party, *for cause shown.*" *Id.* This provision was inserted into the bankruptcy code primarily to support the constitutionality of the delegation of power to non-Article III judges, *see* William L. Norton, Jr. & Richard Lieb, *Jurisdiction and Procedure Under the 1984 Bankruptcy Amendments, in* Norton Bankruptcy Law and Procedure 143 (1985) (referencing the 1982 Interim rule promul-

gated by the Judicial Conference). In support of his motion to withdraw, Finley argues that the claims he wishes to withdraw will necessitate a jury trial and that only the district court could conduct such a jury trial. Thus Finley contends that the necessity of a jury trial is "cause" to withdraw under the non-mandatory provision of section 157(d).

■ Congress neglected to define what might constitute "cause" under the non-mandatory withdrawal provision of § 157(d) in either the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the 1984 Act) or its legislative history. *See In re Lion Capital Group*, 63 B.R. 199, 206 (S.D.N.Y.1985). Commentators note, though, that the cause standard requires more compelling support than a sound discretion standard would. *See* Norton & Lieb, at 142. Since the primary reason for Congress' insertion of the non-mandatory provision is to protect against a constitutional attack, and since Congress suggests reading the mandatory provision narrowly, the Court finds that the "cause" standard in the non-mandatory withdrawal provision is a high one. Thus, only a compelling cause warrants withdrawal from the automatic reference to bankruptcy under the non-mandatory provision. The Court examines below whether a jury demand is sufficient cause to withdraw and holds that it is not.

## B. Right to a Jury Trial

■ Normally, the bankruptcy court is an appropriate forum for initially determining whether there is a right to trial by jury of issues for which a jury trial is demanded. *See* Bankr.Rule 9015(b)(3); *American Universal Insurance Co. v. Pugh*, 821 F.2d 1352, 1355 (9th Cir.1987). The Bankruptcy Rules, however, state only that the bankruptcy court "may" consider whether a jury trial is warranted. Bankr.Rule 9015(b)(3). They do not restrict this consideration to bankruptcy judges, presumably because, before it refers bankruptcy claims under section 157(a), the district court has the initial jurisdiction to hear such claims. Since the trustee's motion to withdraw is based on the "cause" that he has a right to a jury trial on the claims he wishes to withdraw, the Court will decide whether the trustee has a right to a jury trial in order to determine whether he has shown cause to withdraw.[1]

■ The controlling case on whether the trustee has a right to a jury trial on his fraudulent conveyance claim is *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). In *Granfinanciera*, the Supreme Court held that a creditor who had not filed a claim in the debtor's bankruptcy proceedings did have a Seventh Amendment right to a jury trial when the trustee of the bankruptcy

---

1. The Court notes that if it denied the motion to withdraw as premature because the bankruptcy court has not decided whether the trustee had a right to a jury trial, then the bankruptcy court's decision of the right to a jury trial issue could be appealed subsequently to the district court under 28 U.S.C. § 158.

The relationship between the district court and the bankruptcy court is different, however, from that between the district court and the circuit court of appeals. The district court is the traditional trial court while the circuit court, of course, is the traditional appellate tribunal. In contrast, Congress established the bankruptcy courts in order that the district courts could delegate bankruptcy cases to specialized judges. Thus, bankruptcy courts act as surrogate trial courts in these specialized cases and have a special power to issue final orders on certain bankruptcy issues which then become appealable to the district court. Since the relationship between the district court and the bankruptcy

court is not that of the traditional appellate-trial type, it is not necessarily more appropriate for the bankruptcy court to hear the issue of right to jury trial before the district court. Because Congress has provided that district courts may withdraw the reference "for cause," the district court is an appropriate forum to determine whether a right to a jury trial exists since it may be a viable cause to withdraw the reference to bankruptcy.

Citicorp argues that to allow district courts, through a motion to withdraw the reference, to determine whether a right to a jury trial exists would be inefficient. To the contrary, if the Court remanded this issue to the bankruptcy court today, the bankruptcy court would initially decide this issue at some future date, and its decision could be challenged at three appellate levels through interlocutory appeals before trial. By deciding the issue today, the Court expedites the initial decision of the jury trial issue and leaves only two subsequent appeals possible.

estate sued the creditor in district court to recover monies for a fraudulent conveyance under 11 U.S.C. § 548(a)(2). 109 S.Ct. at 2802. The Supreme Court based its decision, however, on the fact that the creditor had not filed a claim in the bankruptcy proceeding, and thus the trustee's fraudulent conveyance claim did not arise " 'as part of the process of allowance and disallowance of claims.' " *Id.* at 2799 (quoting *Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932)).

Since Citicorp has filed a claim against the bankruptcy estate in this case, the trustee's fraudulent conveyance claim arises out of the allowance of claims process, and no Seventh Amendment right to a jury trial exists. This result follows from the reasoning that once a creditor makes a claim in bankruptcy, the fraudulent conveyance issue becomes closely intertwined with the federal regulatory scheme of bankruptcy, and thus may be adjudicated by a non-Article III court without a jury.[2] *See id.* 109 at 2797. This reasoning is consistent with the Supreme Court's earlier decision, *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (no right to a jury trial on preference action once creditor has filed claim), which stated that "there is no Seventh Amendment right to a jury trial for determination of objections to claims." 86 S.Ct. at 476.

The trustee contends, however, that the Supreme Court has only held that a creditor waives a right to a jury trial by filing claims in bankruptcy, and that the creditor's action cannot act as a waiver of the trustee's right to a jury trial. The trustee bases this argument on language in *Granfinanciera* that states: "We read *Schoenthal* and *Katchen* as holding that, under the Seventh Amendment, a *creditor's right* to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate." 109 S.Ct. at 2799 (trustee's emphasis added). Contrary to the trustee's assertion, however, this statement is not based on any waiver of Seventh Amend-

ment rights by the creditor, but is based on the idea that once the creditor makes a claim against the bankruptcy estate, any subsequent fraudulent conveyance or preference counterclaim by the trustee is equivalent to an objection to the creditor's claim, and therefore part of the claims allowance process. *See id.* n. 14 ("[i]t warrants emphasis that this rationale differs from the notion of waiver").

Language from a more recent Supreme Court decision confirms such an interpretation of *Granfinanciera.* In *Langenkamp v. Calp,* — U.S. ——, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), the Supreme Court held that a creditor who had filed a claim against the bankruptcy estate was not entitled to a jury trial under the Seventh Amendment when, in response, the trustee initiated a preference action. 111 S.Ct. at 331. In reaching this holding, the Court stated:

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power. If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims allowance process which is triable only in equity. In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction. As such, there is no Seventh Amendment right to a jury trial.

*Id.* (citations omitted). Like the Court in *Granfinanciera,* the *Langenkamp* Court also held that the right to a jury trial on a trustee's claim against a creditor turns on whether the creditor previously has submitted a claim against the estate. *Id.* Because Citicorp had already filed claims against the bankruptcy estate when the trustee filed fraudulent conveyance and preference counterclaims, the trustee has no right to a jury trial, and therefore there

---

**2.** As noted below, the Supreme Court left for another day the question of whether a bankrupt-

cy court may conduct a jury trial. *Granfinanciera,* 109 S.Ct. at 2802.

is no "cause shown" to withdraw the reference to bankruptcy.

### C. Power of Bankruptcy Court to Conduct Jury Trial

■ Another basis for denying the trustee's motion to withdraw the reference is that even if the trustee was entitled to a jury trial, the bankruptcy court could conduct the jury trial. Therefore, the fact that a jury trial was necessary would not be "cause" to withdraw. Although the Supreme Court has not ruled on the issue, and a split of authority exists presently among the three circuit courts which have addressed the issue, the best reasoned analysis leads to allowing bankruptcy courts to conduct jury trials.

To begin with, the Court examines 28 U.S.C. § 151, which states:

[T]he bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for the district. *Each bankruptcy judge*, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and *may preside alone and hold a regular* or special *session* of the court, except as otherwise provided by law or by rule or order of the district court.

*Id.* (emphasis added). Though the language of the statute does not expressly authorize bankruptcy courts to conduct jury trials, the language appears to grant broad powers to the bankruptcy court which would not exclude jury trials.

And though the Congressional debates concerning the 1984 Act are silent as to whether bankruptcy courts can conduct jury trials, the history leading to the enactment of the 1984 Act does suggest that Congress intended the bankruptcy courts to have this power. When the Supreme Court decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,

458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) held the prior bankruptcy act to be as an unconstitutionally broad grant of power to the bankruptcy courts, the Court did not state that the prior law's grant of authority to bankruptcy courts to conduct jury trials was by itself unconstitutional. Reflecting a cautious approach, however, the interim rules that were promulgated to allow the bankruptcy system continue operating pending Congress' passage of new legislation explicitly prohibited bankruptcy court from conducting jury trials. Emergency Rule of Reference (d)(1)(D); *see also, In re McCormick,* 67 B.R. 838, 841–42 (D.Nev.1986). The 1984 Act, which supplanted the interim rules, incorporated most of the interim rules, but notably not Rule (d)(1)(D) nor any rule similar. *See In re Stoecker,* 117 B.R. 342, 346–47 (N.D.Ill. 1990). Thus, in passing the 1984 Act, Congress declined to adopt a rule that would prohibit bankruptcy courts from conducting jury trials.[3] Although not as probative as express language, this historical background strongly suggests that Congress intended bankruptcy court to be able to hear jury trials.

Further, in *In re Ben Cooper, Inc.,* 896 F.2d 1394 (1990), *cert. den'd,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991), the Second Circuit found that an implied power of bankruptcy court to conduct jury trials exist in the 1984 Act. *Id.* at 1402. The *Ben Cooper* court reasoned that since *Granfinanciera* requires jury trials in certain core proceedings, and Congress intended such core proceedings to be heard by a bankruptcy court empowered to issue final orders, *see* 28 U.S.C. § 157(b)(1), then the bankruptcy court must be empowered to hear jury trials. *Id.* While the Eighth and Tenth Circuits have criticized the reasoning in *Ben Cooper, see In re United Missouri Bank of Kansas City,* 901 F.2d 1449, 1456 (8th Cir.1990); *Kaiser Steel Corp. v. Frates,* 911 F.2d 380, 389 (10th Cir.1990),

---

**3.** Congress probably chose not to expressly authorize bankruptcy courts to conduct jury trials because it feared a constitutional challenge. Notably, since the passage of the 1984 Act, the Second Circuit has held that a bankruptcy court may conduct a jury trial without violating the Seventh Amendment or Article III. *In re Ben Cooper,* 896 F.2d 1394, 1403 (1990). Though, as discussed below, other courts have criticized *Ben Cooper,* they have criticized its statutory interpretation and not its constitutional holding.

nothing in those opinions dismantles the reasoning of today's decision.

### D. Timing of Motion to Withdraw the Reference

█ Finally, the Court also bases its decision to deny the motion to withdraw the reference on the basis that the motion is premature. The inefficiencies inherent in a withdrawal at this time, when the bankruptcy court is thoroughly familiar with the case, and when the issues triable by jury are not ready for trial, are self-evident. Several district courts have denied motions to withdraw on this basis. *See, e.g., In re Wedtech Corp.*, 94 B.R. 293, 297 (S.D.N.Y.1988); *In re Auto Specialties Manufacturing Co.*, 134 B.R. 227, 228–29 (W.D.Mich.1990).

## III. CONCLUSION

For the above reasons, the Court hereby DENIES the trustee's motion to withdraw the reference to bankruptcy. An order consistent with the result reached in this memorandum will be entered simultaneously with this memorandum.