**In re Sarrah W. COLBERT, Debtor.**

**Sarrah W. COLBERT, Plaintiff,**

**v.**

**Phillip N. ANDERSON, Israel Raveh, and William B. Steiger, Defendants.**

**Bankruptcy No. 5–89–01080.**
**Adv. No. 5–90–0063.**

United States Bankruptcy Court,
D. Connecticut.

Aug. 7, 1990.

---

**52**

Mark V. Oppenheimer, Oppenheimer, Marchak & Leiss, Newtown, Conn., for plaintiff.

Harvey J. Rothberg, Stamford, Conn., for Israel Raveh and William B. Steiger.

MEMORANDUM AND ORDER ON MOTION TO DISMISS FOR LACK OF JURISDICTION UNDER 28 U.S.C. § 157

ALAN H.W. SHIFF, Bankruptcy Judge.

The defendant Israel Raveh[1] moves for the dismissal of this adversary proceeding, arguing that it does not arise under or in a case under title 11, so that it is not a core proceeding, and that it is inconceivable it will have an impact on the administration of the plaintiff's estate, so that it is not "related". See 28 U.S.C. § 157(b), (c). Raveh further contends that assuming arguendo that this is a related proceeding, his motion should be granted because he does not consent to this court's jurisdiction under 28 U.S.C. § 157(c)(2), he reserves his right to a jury trial, and this court cannot conduct a jury trial in a related proceeding without the parties' consent. Raveh attempts to buttress that argument by the assertion that retention of this proceeding during its pre-jury trial stages will cause delay and the waste of judicial resources.

### I.

On September 7, 1989, the plaintiff filed a petition under chapter 13 of the Bankruptcy Code. On March 7, 1990, the plaintiff commenced the instant adversary proceeding, alleging the following material facts.

The defendants, doing business under the name Swiss Conservative Group, placed the following advertisement in a number of newspapers:

-HOMEOWNERS-
● FORECLOSURE!!
● BANKRUPTCY!!
● DIVORCED!!
Falling behind on your mortgage payments?
We can help!
No payments up to two years!
Bad credit, bankruptcy or
unemployment is not a problem.
Foreclosure assistance available
for the divorced and self employed.

Consolidate bills—save your home!
*THE SWISS CONSERVATIVE GROUP*

The plaintiff contacted the defendants in response to that advertisement. At all relevant times, the defendant Anderson acted as attorney for The Swiss Conservative Group, the defendants, and the plaintiff. On March 7, 1987, the plaintiff, acting on the advice of the defendants, entered into a contract with her son to sell him her residence for $160,000.00; entered into a lease and option agreement with her son; and entered into a contract with the defendants whereby the defendants agreed to assist her in obtaining a mortgage in exchange for a $32,000.00 fee. On May 7, 1987, Dime Real Estate Services loaned the plaintiff's son $128,000.00 for the purchase of the plaintiff's house. The plaintiff did not receive any of the sale proceeds. Instead, those funds were used to establish an escrow account to fund two years of payments on the son's $128,000.00 mortgage with Dime and to pay her outstanding mortgage, Anderson's legal fee, taxes, and the $32,000.00 commission claimed by Swiss Conservative Group. Subsequent to the closing, Anderson gave the plaintiff an IRS Form 1099–B declaring that she had sold her house for $160,000.00.

The complaint alleges that the defendants persuaded her to pay them an unconscionable and unearned fee, that they structured the sale in such a way that she was unable to meet established future contingencies, and that the foregoing transactions were part of a scheme by the defen-

---

1. Although Attorney Rothberg represents both Israel Raveh and William B. Steiger, the instant motion was filed by Raveh only.

dants to defraud the plaintiff in violation of: (1) the Mail Fraud, 18 U.S.C. §§ 1341, 1343, and the Racketeer Influenced and Corrupt Organizations ("RICO"), 18 U.S.C. § 1961 et seq., statutes; (2) the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. § 42–110a et seq.; (3) principles of Connecticut common law fraud; and (4) the defendants' fiduciary duty to the plaintiff. Finally, the complaint alleges that Anderson committed legal malpractice. As a consequence, the plaintiff seeks actual, treble, and punitive damages, interest, and costs of suit.

## II.

Title 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 157(b)(1) provides:

Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

■ For a proceeding to arise under title 11, the relief sought must be based on a provision of title 11. Wood v. Wood (Matter of Wood), 825 F.2d 90, 97 (5th Cir.1987); National City Bank v. Coopers and Lybrand, 802 F.2d 990, 994 (8th Cir. 1986); Kolinsky v. Russ (In re Kolinsky), 100 B.R. 695, 701 (Bankr.S.D.N.Y.1989). This adversary proceeding is not based on a provision of title 11. For a proceeding to arise in a case under title 11, it must be one which would not exist but for the bankruptcy case. Matter of Wood, supra, 825 F.2d at 97; In re Kolinsky, supra, 100 B.R. at 701. The plaintiff's action does not involve the "restructuring of debtor-creditor relations, which is at the core of federal bankruptcy power...." Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982). See also Granfinanciera v. Nordberg, —— U.S. ——, 109 S.Ct.

2782, 2798 n. 12, 106 L.Ed.2d 26 (1989). It therefore does not arise in a case under title 11, and is not a core proceeding.

28 U.S.C. § 157(c)(1) provides:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

■ A proceeding is related to a bankruptcy case if its outcome "could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir.1984) (emphasis in original). See also, e.g., American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.), 885 F.2d 621, 623 (9th Cir.1989); In re Kolinsky, supra, 100 B.R. at 702. Obviously a proceeding which could affect the amount of property available for distribution to creditors is a related proceeding. This adversary proceeding is intended to achieve that result.

■ Although this court has the authority to conduct jury trials in core proceedings, Ben Cooper, Inc. v. Insurance Co. of the State of Pa. (In re Ben Cooper, Inc.), 896 F.2d 1394, 1402–04 (2d Cir.1990), it cannot conduct a jury trial in a related proceeding absent the consent of the parties. As noted, § 157(c)(1) requires a district court to make a de novo review of related proceedings which are heard by a bankruptcy court in the absence of the parties' consent. The Seventh Amendment provides that "no fact tried by jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." Thus, a district court could not conduct the required de novo review if a bankruptcy court were to conduct a jury trial in a proceeding under § 157(c)(1). See id. at 1403 ("[T]he Seventh

Amendment may well render unconstitutional jury trials in non-consensual non-core proceedings, because of the requirement that findings of fact by the bankruptcy court be reviewed de novo by the district court.").

However, even assuming that Raveh is entitled to and may at some future date demand a jury trial, dismissal of this adversary proceeding is not mandated. Initially it is noted that this court's lack of authority to conduct a jury trial in a § 157(c)(1) proceeding does not divest the district court of its jurisdiction under 28 U.S.C. § 1334(b). Thus, it appears that withdrawal to the district court under 28 U.S.C. § 157(d) rather than dismissal by this court was the relief Raveh should have sought if he wished to divest this court of jurisdiction at this stage of the proceeding.

Withdrawal at this juncture, however, is not warranted. As the court in *O'Connell v. Terranova (In re Adelphi Institute, Inc.)*, 112 B.R. 534, 538 (S.D.N.Y.1990), held, "[t]he appropriateness of removal of the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial-ready." *See also Wedtech Corp. v. Banco Popular de Puerto Rico (In re Wedtech Corp.)*, 94 B.R. 293, 296–97 (S.D.N.Y.1988). A bankruptcy judge may determine interlocutory matters in a proceeding under § 157(c)(1), as that "statute preserves only 'final' orders for entry by the district judge...." *THB Corp. v. Essex Builders Co., Inc. (In re THB Corp.)*, 94 B.R. 797, 803 (Bankr.D.Mass.1988). *See also In re Adelphi Institute, Inc., supra*, 112 B.R. at 539. Retention of jurisdiction by this court over pre-trial matters will reduce to a minimum the burden placed upon the district court and the potential for the use of withdrawal as a litigation tactic.

### III.

For the foregoing reasons, I conclude that this adversary proceeding is a non-core, related proceeding; the defendant's motion to dismiss is denied; and IT IS SO ORDERED.