**VISTA METALS CORP., Plaintiff,**

**v.**

**METAL BROKERS INTERNATIONAL, INC.; John Scaffidi as Trustee of the Estate of Metal Brokers International, Inc.; Hansen Storage Company; The Home Insurance Company; Distribution Express, Inc.; Continental Western Insurance Co.; Delta Group, Inc.; Spectro Alloy Corp.; Thomas J. La Rose, individually and d/b/a Thomas J. La Rose and Associates; RCM Industries, Inc.; Allied Die Casting, Inc.; Eastern Aluminum, Inc.; Gibbs Die Casting Aluminum Inc.; True Die Cast Corp.; Walker Die Casting, Inc.; Ajax Die Casting, Inc.; Defendants.**

No. 93–C–505.

United States District Court, E.D. Wisconsin.

Oct. 29, 1993.

Thomas M. Pyper, Whyte & Hirschboeck, Madison, WI, for plaintiff.

John L. Kirtley, Godfrey & Kahn, Milwaukee, WI, for defendants.

### MEMORANDUM AND ORDER

WARREN, Senior District Judge.

Before the Court is the defendants' Motion to Withdraw Reference pursuant to 28 U.S.C. § 157(d) in the above-captioned matter. For the following reasons, this motion is denied.

## I. LEGAL BACKGROUND

This is one of several complaints brought by aggrieved aluminum ingot suppliers involving allegedly fraudulent conduct by defendant Metal Brokers International, Inc. ("MBI") in brokering their wares. *See, e.g., Met–Al, Inc. v. Hansen Storage Co.,* 828 F.Supp. 1369 (E.D.Wis.1993); *Liston Aluminum Brick Co. v. Distribution Express, Inc. (In re: Liston Aluminum),* No. 93–C–785 (E.D.Wis.1993), Adv. No. 93–2005 (Bankr. E.D.Wis.1993). Vista Aluminum Corporation ("Vista"), a supplier of aluminum ingot, asserts in the underlying adversary proceeding that it has incurred significant financial losses due to wrongful conduct by MBI and the other defendants, and brings state common law and statutory claims of fraudulent transfer, constructive trust, unjust enrichment, conversion, negligence, improper delivery, strict liability and negligent misrepresentation, and intentional deceit. *Vista Metals Corp. v. Metal Brokers Int., Inc.,* Adv. No. 93–2142 (Bankr.E.D.Wis.1993).

On October 20, 1992, MBI's creditors filed a petition for involuntary bankruptcy against MBI, and the bankruptcy court entered its order for relief on November 13, 1992. On May 20, 1993, after being served with Vista's adversary complaint, defendant Thomas J. LaRose filed the instant motion, and was eventually joined by defendants Distribution Express, Inc. ("DEI"), Continental Western Insurance Company ("CWIC"), Hansen Storage Company ("Hansen"), Home Insurance Company ("HIC"), RCM Industries ("RCM"), Allied Die Casting ("ADC"), Gibbs

Die Casting Aluminum ("Gibbs"), and E.A. Aluminum ("EAA").[1] The defendants argue that, because Vista has asserted "non-core" state common law claims in the adversarial proceeding underlying this matter, and because the defendants have requested trial by jury, this Court should withdraw this matter from the bankruptcy court. Vista responds that immediate withdrawal is unnecessary and violative of notions of judicial economy.

## II. *LEGAL FRAMEWORK*

■ In 1982, the Supreme Court recognized that Congress had impermissibly assigned certain non-delegable Article III judicial functions to Article I bankruptcy courts. *Northern Pipeline Const. Corp. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). As a result, Congress amended the Bankruptcy Act in 1984 to provide district courts with original, but not exclusive, jurisdiction over all bankruptcy matters. *See* 28 U.S.C. § 1334(b). When a bankruptcy proceeding is filed in this district, it is automatically referred to the bankruptcy court. *See* 28 U.S.C. § 157(a). This Court, however, may withdraw reference from the bankruptcy court if the action involves matters that should be adjudicated by an Article III court, *see In re Stavriotis*, 111 B.R. 154, 156 (N.D.Ill.1990), and must withdraw reference if, "on timely motion of a party ... the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

■ Permissive withdrawal of reference is proper if a moving party demonstrates sufficient cause. *In re Sevko, Inc.*, 143 B.R. 114, 115 (N.D.Ill.1992); *In re Wieboldt Stores, Inc.*, 1988 WL 71718 (N.D.Ill. June 29, 1988). "Sufficient cause exists where there is 'an overriding interest based on a finding by the court that the withdrawal of reference is essential to preserve a higher

interest than that recognized by Congress and is narrowly tailored to serve that interest.'" *In re FMG, Inc.*, 1991 WL 247595, at *1 (N.D.Ill. Nov. 14, 1991) (*citing In re De-Lorean Motor Co.*, 49 B.R. 900, 912 (Bankr. E.D.Mich.1985)). In determining the presence of a "higher interest," the Court should consider whether withdrawal will (1) promote judicial economy, including whether a party has requested a jury trial,[2] (2) conserve the debtor and/or creditors' resources, (3) reduce forum shopping and confusion, (4) expedite the bankruptcy process, and (5) promote uniformity in bankruptcy administration. *See, e.g., FMG*, 1991 WL 247595, at *1. *See also Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir.1985); *Sevko*, 143 B.R. at 117.

■ The Seventh Circuit defines non-core proceedings as those that do not involve a substantive right provided by Title 11 or that, by their very nature, generally arise outside the context of a bankruptcy case. *Diamond Mortg. Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1239 (7th Cir.1990); *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir.1990). As a result, pre-petition state law claims "have traditionally and consistently been found to be non-core in nature due to their tenuous relationship to a bankruptcy case." *FMG*, 1991 WL 230390, at *1. *See also Novak*, 116 B.R. at 627 (debtor's pre-petition breach of contract and tortious interference claims characterized as non-core); *Valley Forge Plaza Associates v. Fireman's Fund Ins. Companies*, 107 B.R. 514, 516–17 (E.D.Pa.1989) (pre-petition contract claims, but not post-petition contract claims, characterized as non-core); *In re Sokol*, 60 B.R. 294, 296 (Bankr.N.D.Ill.1986) (debtor's pre-petition contract and tort claims characterized as non-core).

Several district court judges within the Seventh Circuit have found sufficient cause for permissive withdrawal where a "party to a non-core proceeding stands on its right to

---

1. E.A. Aluminum was apparently misidentified in the case caption as "Eastern Aluminum, Inc."

2. Because the Seventh Circuit has recently determined that bankruptcy judges are not authorized under the Bankruptcy Code to conduct jury trials, *Matter of Grabill Corp.*, 967 F.2d 1152, 1158

(7th Cir.1992), the right to a jury trial is of primary importance in deciding the appropriateness of permissive withdrawal in both core and non-core bankruptcy proceedings. *See* 28 U.S.C. § 157(b)(2).

trial by jury ... and the parties do not consent to adjudication by the bankruptcy court." *In re FMG, Inc.*, 1991 WL 230390, at *1 (N.D.Ill. Oct. 28, 1991) (Kocoras, J.). *See also In re Novak*, 116 B.R. 626, 627 (N.D.Ill.1990) (Duff, J.). Others, however, have found immediate withdrawal of reference inappropriate, despite the presence a non-core proceeding with the right to a jury trial, until the case is "trial-ready." *Business Communications Inc. v. Freeman*, 129 B.R. 165 (N.D.Ill.1991) (Bua, J.) (noting that "the bankruptcy court may properly resolve pretrial interlocutory questions [and] make recommendations based on its proposed findings" to the district court under 28 U.S.C. § 157(c)(1)). *See also In re Adelphi Inst., Inc.*, 112 B.R. 534, 538 (S.D.N.Y.1990) (noting that bankruptcy court may resolve pretrial interlocutory questions); *In re Colbert*, 117 B.R. 51, 54 (Bankr.D.Conn.1990); *In re Candy Braz, Inc.*, 62 B.R. 3, 4 (N.D.Ill.1986) (Williams, J.) (noting that, "even if non-core matters are involved, 28 U.S.C. § 157(c)(1) authorizes the bankruptcy court to hear them, subject to review by the district court.").

Finally, all motions for withdrawal of reference have a threshold timeliness requirement. *See, e.g., Sevko*, 143 B.R. at 115; *Stavriotis*, 111 B.R. at 157. Although "timeliness" is not defined under 28 U.S.C. § 157(d), the motion should be made "as soon as possible after the moving party has notice of the grounds for withdrawing the reference," *Matter of Lissner Corp.*, 115 B.R. 604, 608 (N.D.Ill.1990) (citing *In re IQ Telecommunications, Inc.*, 70 B.R. 742, 746 (N.D.Ill. 1987)), or at "the first reasonable opportunity." *In re Baldwin–United Corp.*, 57 B.R. 751, 753 (S.D.Ohio 1985). *See also Sevko*, 143 B.R. at 115. A court's evaluation of timeliness should be based upon the particular facts of the case, including whether the moving party has a legitimate interest in the withdrawal or is merely employing "stalling tactics" designed to prejudice the non-mov-

ing party. *Lissner*, 115 B.R. at 608; *Stavriotis*, 111 B.R. at 157.

## III. DISCUSSION

### A. TIMELINESS OF MOTION FOR WITHDRAWAL OF REFERENCE

Mr. LaRose indicates that he filed the instant motion on May 20, 1993, "contemporaneously with the filing of his Answer and demand for jury trial." DEI, CWIC, Hansen, and HIC joined Mr. LaRose in requesting withdrawal of reference from the bankruptcy court and trial by jury [3] on June 10, 1993. On July 28, 1993, RCM and ADC asked to join DEI's motion for withdrawal of reference and jury trial request, and Gibbs requested the same on August 3, 1993.[4] In its July 6, 1993 and August 2, 1993 response briefs, Vista did not challenge the timeliness of the defendants' requests.

The instant motion by each of the above-named defendants has been timely brought before this Court. Mr. LaRose filed his permissive withdrawal request along with his responsive pleadings, and DEI, CWIC, Hansen, and HIC presented their motions shortly thereafter. Each of these defendants clearly (1) reviewed and evaluated Vista's claims, (2) formulated a litigation plan, and (3) filed an appropriate response within a reasonable period of time after receiving Vista's adversary complaint. RCM, ADC, and Gibbs were apparently less diligent in bringing their requests. However, given Vista's notice of the other defendants' outstanding motions and the early stage of the underlying adversarial proceeding before the bankruptcy court, Vista has suffered no prejudice as a result of any possible delays in filing by RCM, ADC, or Gibbs. Furthermore, given the amorphous language regarding permissive withdrawal under 28 U.S.C. § 157(d), parties generally take longer to recognize its appropriateness than to recognize the possibility of mandatory withdrawal. Therefore, we are satisfied that all of the above-named

3. Although these defendants only asserted in the instant motion that they were "entitled to a jury trial," the Court will assume that they, in fact, made proper jury trial demands under Federal Rule of Civil Procedure 38(b) (although they may, in the interests of clarity, wish to file affirmative demands for jury trial).

4. *Id.*

defendants have timely presented the instant motion.

## B. SUFFICIENT CAUSE FOR WITHDRAWAL OF REFERENCE

■ Because Vista's claims against the defendants involve pre-petition activity and are based on state common and statutory law, we are satisfied that the underlying adversarial action involves non-core proceedings as defined by the Seventh Circuit in *Diamond* and *Barnett*. We are also satisfied that each of the defendants has timely asserted their right to trial by jury regarding Vista's claims pursuant to Federal Rule of Civil Procedure 38(b),[5] and recognize that, pursuant to *Grabill*, bankruptcy courts in the Seventh Circuit may not conduct jury trials in either core or non-core proceedings. However, we nevertheless find that the "higher interests" delineated in *FMG*, 1991 WL 247595, at *1, *inter alia*, are best satisfied if we allow this case to remain before the bankruptcy court.

■ The Court finds that uniformity in bankruptcy administration and expeditiousness in the bankruptcy process are best served by avoiding a premature grant of the defendants' motion for withdrawal of reference. As noted in the *Business Communications* line of cases, the bankruptcy court has authority under 28 U.S.C. § 157(c)(1) to resolve non-dispositive pretrial matters in non-core proceedings and to make recommendations to the district court regarding dispositive matters based on its proposed findings of fact and conclusions of law. In addition, we recognize that, because the pre-petition conduct of MBI has resulted in a litany of adversary claims before Bankruptcy Judge Ihlenfeldt by different aluminum ingot sellers against MBI and its business partners,[6] he has already had significant exposure to many of the factual and legal issues, as well as the parties, involved in the underlying dispute. As a result, we are satisfied

that he can best address Vista's adversary claims while ensuring the uniform, efficient administration of the entire bankruptcy estate, and that this matter will proceed through bankruptcy court with minimal delay.

We also see no prejudice resulting to the defendants if we deny their request to withdraw reference. We have noted that Bankruptcy Judge Ihlenfeldt has the authority and experience to resolve the underlying adversary claims expeditiously. And given the early stage of the underlying adversary proceeding, the Court is satisfied that the bankruptcy court can best coordinate scheduling in both the bankruptcy and adversary cases in a manner that is fair to all parties concerned.

We also find that a withdrawal of reference at this early stage in the adversary proceeding would frustrate the "higher interests" of conservation of debtor and creditor resources and minimizing confusion in litigation. Keeping this matter before the bankruptcy court will allow the courts and the parties to avoid unnecessary delays and transfer costs. Again, given Bankruptcy Judge Ihlenfeldt's intimate knowledge of the factual and legal bases underlying this case and the parties involved, we are satisfied that he can handle this matter quickly and with the lowest litigation and administrative costs. In addition, he can coordinate the development of the bankruptcy and adversary cases in a manner most efficient for the parties. Finally, the parties can concentrate all of their related claims before one tribunal, thus minimizing confusion, inefficiency, financial costs, and jurisdictional overlap between the district and bankruptcy courts.

Although we recognize that this matter may again surface before this Court for dispositive rulings and/or for jury trial, we nevertheless find that, based on the foregoing considerations, judicial economy is best

---

5. *Id.* This Court is also satisfied that the defendants, because they did not initiate the underlying adversary proceeding and therefore did not choose the bankruptcy court as the tribunal for the claims at issue, did not waive their jury trial right by submitting to the bankruptcy court's jurisdiction. *See, e.g., Met–Al, Inc. v. Hansen Storage Co.,* 157 B.R. 993, 999–1000 (E.D.Wis.

1993) (Warren, J.). As a result, given the predominantly legal, rather than equitable, nature of Vista's adversary complaint, it appears that the defendants are, in fact, entitled to a jury trial regarding the majority of claims in this case.

6. *See supra* page 455.

served by keeping the underlying matter with the bankruptcy court through the pretrial process. Given the Court's passing familiarity with some of the facts underlying the parties' dispute as a result of our handling of the *Met–Al* litigation, we will be able to review *de novo* the bankruptcy court's findings and recommendations, and conduct any requisite jury trial, with minimal delay and administrative costs.[7] Thus, even though our denial of the defendants' request for withdrawal of reference may cause some future transfer costs between the district and bankruptcy courts (assuming this matter proceeds to trial), we discount such inchoate future costs accordingly, and are satisfied that we have adequate background information to act expeditiously in any subsequent district court proceedings.

## IV. CONCLUSION

For the foregoing reasons, the Court must DENY the defendants' Motion for Withdrawal of Reference in the above-captioned matter.

**SO ORDERED.**

---

7. The Court granted the defendants' Motion for Withdrawal of Reference in *Met–Al, Inc. v. Hansen Storage Co.*, 157 B.R. 993, 1003 (E.D.Wis. 1993), one of the forementioned series of claims brought by aluminum ingot sellers aggrieved by the fraudulent conduct of MBI. *See supra* page 455. However, Met–Al asserted a Federal Bill of Lading Act claim against defendant DEI in the underlying adversary proceeding; therefore, the Court employed mandatory withdrawal of reference to remove the claim against DEI from the jurisdiction of the bankruptcy court. Based on our grant of DEI's motion for mandatory withdrawal, we *sua sponte*, employed permissive withdrawal of reference to remove Met–Al's claims against Hansen, which consisted entirely of pre-petition state law claims, from the jurisdiction of the bankruptcy court. In so doing, we recognized that permissive withdrawal of Met–Al's claims against Hansen would best serve judicial economy by keeping all related litigation before one tribunal.

Unlike Met–Al, Vista has asserted no federal statutory claims against any defendant; therefore, mandatory withdrawal is not at issue. As a result, the judicial economy considerations prevalent in *Met–Al* are absent in the instant case, and we therefore begin our analysis of the appropriateness of permissive withdrawal on a clean slate.